1
2
3
4
5
6
7
8                  **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KENNETH W. SHUMAN,                    No. 2:12-CV-0949-CMK

12              Plaintiff,

13        vs.                              <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
              Defendant.
16   _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action under

19   42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22   before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-

23   motion for summary judgment (Doc. 19).

24   / / /

25   / / /

26   / / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 13, 2008.  In the application, plaintiff claims that disability began on July 1, 2007.  Plaintiff claims that disability is caused by a combination of "PTSD, migraine headaches, degenerative disc disease, and chronic pain." Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 14, 2010, before Administrative Law Judge ("ALJ") Mark C. Ramsey.   In a October 21, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): post-traumatic stress disorder, and degenerative disc disease of the lumbar spine;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant has the residual functional capacity to perform the full range of light work; he can occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he is able to frequently balance; he is able to occasionally stoop, kneel, crouch, and crawl; he can occasionally engage in bilateral overhead reaching; as a migraine precaution, he should avoid concentrated exposure to extreme heat, noise, fumes, odors, dusts, gases, and poor ventilation; due to his back pain, he should avoid concentrated exposure to vibration; decreased mobility in his knees and back require him to avoid concentrated exposure to hazards (machinery, heights, etc.); he is able to perform simple and detailed, but not complex, work; he is not able to perform work with frequent public or co-worker contact;

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on February 9, 2012, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

2

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In his motion for summary judgment plaintiff argues: (1) the ALJ and Appeals Council failed to evaluate plaintiff's VA disability rating; (2) the ALJ rejected plaintiff's testimony as not credible without providing sufficient reasons; (3) the ALJ rejected lay witness evidence without providing sufficient reasons; and (4) the ALJ erred in applying the Medical-Vocational Guidelines despite the existence of non-exertional limitations.

A.    **Plaintiff's VA Disability Rating**

As to plaintiff's VA records and disability rating, the ALJ stated:

> The majority of the claimant's medical records originated with the Veterans Administration.  The undersigned notes that because the ultimate responsibility for determining whether a claimant is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and non-governmental agencies.  In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency.

Citing McCartey v. Barnhart, 298 F.3d 1072 (9th Cir. 2002), plaintiff argues that the agency failed to give "great weight" to his VA disability rating.  According to plaintiff, the most recent VA records available to the agency showed that plaintiff had a 100% disability rating as of August 1, 2007.  Plaintiff contends that the ALJ erred by not providing "persuasive, specific, valid reasons" for not accepting the VA's disability determination.

The court finds that the ALJ did not err.  When viewed as a whole, the hearing decision adequately reflects specific reasons for finding plaintiff not disabled.  Specifically, the ALJ noted: (1) x-rays taken in 2009 were unremarkable; (2) the frequency of plaintiff's migraine headaches had decreased with medication; (3) March 2009 MRI results showed a normal brain and knee; and (4) plaintiff's sleep had improved with medication.   Moreover, as the ALJ noted, disability standards applied by the VA and Social Security Administration are different.  This is acutely demonstrated in this case as the record reflects that the VA was aware that plaintiff worked through July 31, 2008, when it concluded that he was unemployable as of August 1, 2007.

/ / /

/ / /

/ / /

/ / /

/ / /

**B.    Credibility Assessment**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

1   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

2   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

3   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

4   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

5   claimant cooperated during physical examinations or provided conflicting statements concerning

6   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

7   claimant testifies as to symptoms greater than would normally be produced by a given

8   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

9   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

10           Regarding reliance on a claimant's daily activities to find testimony of disabling

11   pain not credible, the Social Security Act does not require that disability claimants be utterly

12   incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

13   repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . .

14   does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

15   Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

16   Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

17   claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

18   restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

19   claimant was entitled to benefits based on constant leg and back pain despite the claimant's

20   ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

21   activities are not easily transferable to what may be the more grueling environment of the

22   workplace, where it might be impossible to periodically rest or take medication").   Daily

23   activities must be such that they show that the claimant is ". . .able to spend a substantial part of

24   his day engaged in pursuits involving the performance of physical functions that are transferable

25   to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

26   before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

1 | <u>Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

2 |         As to plaintiff's credibility, the ALJ stated:

3 |         On June 14, 2010, the claimant testified that he is married and has a
4 | daughter.  He has been attending college for thee years.  He began in the
fall of 2007.  He maintains almost a full load of courses.  He is attending
5 | Simpson College for business, and he started that school a year past.  He is
able to help with some household chores.  He does laundry, goes shopping
6 | with his wife, mows the lawn, waters plants, and turns on the sprinkler.
He goes to church once a month and goes to a movie every few months.
7 | He owns a car and motorcycle.  He rides the motorcycle to school twice a
week (1/2 mile each way).  He stretches for exercise, walks twice a week
8 | on a hill for 1-2 hours, and sometimes uses a treadmill at a gym.  He has
friends on the internet, coffee with other vets, and parents in the area.  He
9 | attends his daughter's Christmas party and sometimes goes out for pizza.
He has regular headaches several times a day and migraines a few times a
10 | month.  His migraines last a few days each time.  He takes Advil for
headaches.  He has back problems and his back will go out.  He wears a
11 | knee brace daily for his knee problems.  He has gone to the VA for
evaluation for traumatic brain injury.  He takes Gabapentin for seizures.
12 | He needs to take a nap for one hour each day.  His PTSD is the same and
not getting worse (Testimony).

13 | After summarizing the objective medical evidence, the ALJ then stated:

14 |         After careful consideration of the evidence, the undersigned finds that the
claimant's medically determinable impairments could reasonably be
15 | expected to cause the alleged symptoms.  However, the claimant's
statements concerning the intensity, persistence, and limiting effects of
16 | these symptoms are not credible to the extent they are inconsistent with the
above residual functional capacity assessment.
17 |
18 |         In terms of the claimant's alleged impairments, the medical evidence of
record shows that the claimant has not consistently attended treatment
19 | sessions for his PTSD and has refused to take anti-depressants due to their
side effects.  Additionally, his EEG had to be scheduled five times due to
20 | his noncompliance with appointments.  In July of 2009, his record shows
that he avoids taking medications, but stated that Neurontin helped him to
21 | sleep.  He was scheduled for a 5-day evaluation of his alleged neurological
impairments; however, he left after one day because he felt "locked in."
22 | He complained of migraines and other headaches.  He was prescribed
Zomig for his migraines, but he could not breathe from it (Exhibit 1F, 4F,
23 | 9F, 14F/16, 19-20).

24 |         His most recent VA records regarding his PTSD indicate that he has
"occasional decrease in work efficiency" and a Global Assessment of
25 | Functioning (GAF) of 60 (indicative of moderate symptoms) (Exhibit
15F).  That in combination with his pursuit of a 4-year business degree
26 | supports a finding that he is not disabled due to his PTSD.

1
2
3

> To his credit, the record documents that the claimant has consistently tried
> to find work or retraining through vocational rehabilitation.  He reported
> that he could not find work because he could not pass the employer's
> physical exam (Exhibit 1F/19-21).
>
>                                    * * *

4
5
6
7

> Although the claimant alleges disabling impairments (including anger
> outbursts), others have not observed those impairments.  He attended a
> face-to-face interview in which a Social Security representative noted that
> he was a nice young man.  He reported problems with answering due to his
> memory loss.  He wore a knee brace, but no difficulty was noted for
> sitting, standing, and walking (Exhibit 2E/2).

8       The court finds no error.  As indicated above, the ALJ may rely on a claimant's

9   daily activities to discount testimony as not credible where those activities show that the claimant

10  is able to engage in activities which transfer to a work setting.  Such is the case here.  The record

11  shows that plaintiff attended school almost full time.  He does laundry and helps with house

12  work.  He goes shopping, mows the lawn, waters plants, goes to church, exercises, and socializes

13  with friends and family.  Additionally, he rides a motorcycle regularly without problem.  These

14  daily activities are simply inconsistent with plaintiff's testimony of disabling mental and physical

15  limitations but are consistent with the ALJ's residual functional capacity finding that plaintiff can

16  perform light work involving simple and detailed, but not complex, tasks and infrequent public

17  and co-worker contact.

18      **C.    Lay Witness Evidence**

19          In determining whether a claimant is disabled, an ALJ generally must consider lay

20  witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

21  919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

22  testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

23  evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

24  F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony

25  of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

26  919.  ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party

1   statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin.,

2   574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's

3   testimony, which was similar to the claimant's, for the same reasons given for rejection of the

4   claimant's complaints).

5          Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting a

6   third-party statement provided by Lorien Amber Hall, plaintiff's fiancé at the time.  Regarding

7   Ms. Hall's statement, the ALJ stated:

8          His then fiancé, Lorien Amber Hall, has provided a somewhat credible
           function report including emphasis that the claimant is physically and not
9          mentally impaired (Exhibit 3E).  Obviously, her report is not wholly
           objective, as her life situation would benefit from the claimant's favorable
10         disability decision.

11  Without citing any authority, plaintiff argues that the ALJ's reasoning was not legitimate or

12  germane to Ms. Hall but, rather, was a ". . . .general finding based merely on the fact of her

13  relationship to Mr. Shuman."  The court does not agree that the reason articulated by the ALJ is

14  not germane to Ms. Hall.  To the contrary, her personal relationship with plaintiff is germane to

15  no one other than Ms. Hall.  Plaintiff cites no law in support of the proposition that the

16  possibility for financial gain is not a legitimate reason to discount credibility and the court notes

17  that financial gain is an obvious reason to lie.

18          D.    **Application of the Medical-Vocational Guidelines**

19          The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about

20  disability for various combinations of age, education, previous work experience, and residual

21  functional capacity.  The Grids allow the Commissioner to streamline the administrative process

22  and encourage uniform treatment of claims based on the number of jobs in the national economy

23  for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

24  460-62 (1983) (discussing creation and purpose of the Grids).

25  / / /

26  / / /

1    The Commissioner may apply the Grids in lieu of taking the testimony of a

2  vocational expert only when the Grids accurately and completely describe the claimant's abilities

3  and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

4  Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

5  Grids if a claimant suffers from non-exertional limitations because the Grids are based on

6  exertional strength factors only.[1]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

7  "If a claimant has an impairment that limits his or her ability to work without directly affecting

8  his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

9  by the Grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

10  Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

11  even when a claimant has combined exertional and non-exertional limitations, if non-exertional

12  limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

13  1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

14  / / /

15  / / /

16  / / /

17

18    [1]    Exertional capabilities are the primary strength activities of sitting, standing,
    walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to
19  perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart
    P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time
20  and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20
    C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at
21  a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§
    404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time
22  with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§
    404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time
23  with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§
    404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than
24  100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.
    See 20 C.F.R. §§ 404.1567(e) and 416.967(e).
25    Non-exertional activities include mental, sensory, postural, manipulative, and
    environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R.,
26  Part 404, Subpart P, Appendix 2, § 200.00(e).

1          In cases where the Grids are not fully applicable, the ALJ may meet his burden

2 under step five of the sequential analysis by propounding to a vocational expert hypothetical

3 questions based on medical assumptions, supported by substantial evidence, that reflect all the

4 plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

5 where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the

6 ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

7 1341 (9th Cir. 1988).

8          In this case, the ALJ concluded that a finding of "not disabled" was required

9 under Medical-Vocational Rule 202.21 based on plaintiff's age, education, work experience, and

10 residual functional capacity.  Plaintiff argues that the ALJ erred in failing to elicit vocational

11 expert testimony because his limitations are "non exertional in the main – chronic pain, fatigue,

12 postural limitations, lift/carry limitations, impaired sleep, irritability, anger outbursts, impaired

13 concentration and focus, impaired ability to work around others, and need for unscheduled rest

14 periods."

15          The court rejects plaintiff's argument as conclusory.  Plaintiff argues: "Given the

16 nature of Mr. Shuman's impairments, symptoms, and functional limitations, 9th Circuit law, as

17 well as Social Security's own rules, required the ALJ to utilize the services of a vocational expert

18 to determine whether Mr. Shuman was capable of performing any other jobs."  Plaintiff does not,

19 however, specify which alleged non-exertional limitation affects a specific exertional capability,

20 or how.  As discussed above, the ALJ did not err with respect to assessing plaintiff's credibility.

21 Further, plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence.

22 / / /

23 / / /

24 / / /

25 / / /

26

1

### IV.  CONCLUSION

2          Based on the foregoing, the court concludes that the Commissioner's final

3  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

4  ORDERED that:

5          1.      Plaintiff's motion for summary judgment (Doc. 16) is denied;

6          2.      Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

7          3.      The Clerk of the Court is directed to enter judgment and close this file.

8

9  DATED:  September 27, 2013

10

11                                            _____
                                              **CRAIG M. KELLISON**
                                              UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26